UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) ) Plaintiff, ) ) v. ) ) BRENDA MASSEY, ) ) Defendant. ) ) | Civil Action No. 1:21-cv-17-HSO-JCG |

# COMPLAINT

Plaintiff United States of America, through its undersigned attorneys, and by the authority of the Attorney General and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action against Brenda Massey ("Defendant" or "Massey") pursuant to section 309(b) and (d) of the Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1319(b) and (d), to obtain injunctive relief and civil penalties for violations of CWA section 301(a), 33 U.S.C. § 1311(a). Specifically, Massey discharged pollutants, including dredged or fill material and storm water runoff, to waters of the United States at her property in Lucedale, George County, Mississippi (the "Site") without the authorization required by the CWA.

2. In this action, the United States seeks, *inter alia*, to (1) enjoin the discharge of pollutants into waters of the United States without a permit in violation of CWA section 301(a), 33 U.S.C. § 1311(a), at or from the Site; (2) enjoin Massey to comply with the CWA's requirements; (3) require Massey, at her own expense and at the direction of EPA, to restore

impacted streams and wetlands and mitigate the damages caused by her unlawful activities, including compensating for the temporal losses of stream and wetland functions until such time as the damage is restored; and (4) require Massey to pay an appropriate civil penalty as provided in CWA section 309(d), 33 U.S.C. § 1319(d).

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to CWA section 309, 33 U.S.C. § 1319, and 28 U.S.C. §§ 1331, 1345, and 1355.

4. Venue is proper in the Southern District of Mississippi pursuant to CWA section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. § 1391(b) and (c), because Massey conducts business in and resides in this District, the subject property is located in the Southern Division of this District, and the cause of action alleged herein arose in this District.

5. Notice of the commencement of this action will be provided to the State of Mississippi pursuant to CWA section 309(b), 33 U.S.C. § 1319(b).

## THE PARTIES

6. Plaintiff in this action is the United States of America. The United States has authority to bring this action on behalf of the Administrator of the EPA pursuant to 28 U.S.C. §§ 516 and 519, and CWA section 506, 33 U.S.C. § 1366.

7. Defendant Brenda Massey is an individual person who resides and owns property in George County, Mississippi.

8. At all times relevant to the Complaint, Massey owned and/or otherwise controlled the real property that is the subject of this Complaint (the "Site"). Massey directed, controlled, and participated in the planning and implementation of the activities on her property that form the basis for this Complaint in violation of the CWA.

## STATUTORY AND REGULATORY BACKGROUND

### A. General Provisions

9. The Clean Water Act is designed to "restore and maintain the chemical, physical and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

10. To accomplish the CWA's objectives, section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant by any person to navigable waters except as authorized by and in compliance with a permit issued pursuant to CWA section 404, 33 U.S.C. § 1344, or CWA section 402, 33 U.S.C. § 1342, or by other CWA provisions not applicable here. Strict liability applies under the CWA.

11. CWA section 404(a), 33 U.S.C. § 1344(a), authorizes the Secretary of the Army, acting through the Corps of Engineers ("Corps"), to issue permits for the discharge of dredged or fill material into navigable waters at specified disposal sites, after notice and opportunity for public hearing.

12. CWA section 402(a), 33 U.S.C. § 1342(a), authorizes the Administrator of EPA to issue permits for the discharge of pollutants, or combination of pollutants, in compliance with the requirements of the CWA, after opportunity for public hearing.

13. CWA section 402(b), 33 U.S.C. § 1342(b), allows the Administrator of EPA to authorize states to administer their own permit programs for discharges of pollutants into navigable waters within their respective jurisdictions in compliance with the requirements of the CWA.

14. CWA section 502(12), 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

15. CWA section 502(6), 33 U.S.C. § 1362(6), defines "pollutant" to include, *inter alia*, dredged spoil, rock, cellar dirt, and sand.

16. CWA section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas."

17. CWA section 502(14), 33 U.S.C. § 1362(14), defines "point source" to include "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged."

18. CWA section 502(5), 33 U.S.C. § 1362(5), defines "person" to include "an individual [or] corporation."

19. CWA section 309(b), 33 U.S.C. § 1319(b), authorizes the United States to commence a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates CWA section 301(a), 33 U.S.C. § 1311(a).

20. CWA section 309(d), 33 U.S.C. § 1319(d), authorizes the United States to commence an action for civil penalties against any person who violates CWA section 301(a), 33 U.S.C. § 1311(a).

**B.      Section 402**

21. Under section 402(a) of the CWA, EPA may issue permits for the discharge of any pollutant, or combination of pollutants, to the waters of the United States. 33 U.S.C. § 1342(a). Discharges of storm water runoff into streams and wetlands that are waters of the United States require a permit under CWA section 402.

22. Pursuant to section 402(b) of the CWA, 33 U.S.C. § 1342(b), EPA may authorize a state to serve as a permitting authority for section 402 permits.

23. In 1974, EPA granted the State of Mississippi authority for its base program to issue National Pollutant Discharge Elimination System ("NPDES") permits pursuant to section 402(b) of the CWA, 33 U.S.C. § 1342(b). In general, the State's NPDES program extends to all areas of the State other than Indian country.

24. The Mississippi Department of Environmental Quality ("MDEQ") is the state agency with the delegated authority to issue NPDES permits within Mississippi, pursuant to section 402(b) of the CWA, 33 U.S.C. § 1342(b).

25. NPDES permittees must comply with all conditions of their NPDES permits, and any noncompliance with a permit constitutes a violation of the CWA. 33 U.S.C. § 1319(a), (b) & (d).

26. Under sections 309 and 402(i) of the CWA, 33 U.S.C. §§ 1319 and 1342(i), the United States retains concurrent authority with authorized states to enforce NPDES violations.

27. EPA regulations define "small construction activity" to include "clearing, grading, and excavating that result in land disturbance of equal to or greater than one acre and less than five acres" and "the disturbance of less than one acre of total land area that is part of a larger common plan of development or sale if the larger common plan will ultimately disturb equal to or greater than one and less than five acres." 40 C.F.R. § 122.26(b)(15)(i).

28. "Storm water" is defined as "storm water runoff, snowmelt runoff, and surface runoff and drainage." 40 C.F.R. § 122.26(b)(13).

29. Pursuant to section 402 of the CWA, 33 U.S.C. § 1342, EPA promulgated storm water discharge regulations at 40 C.F.R. § 122.1 *et seq.* Dischargers of storm water associated with small construction activity are required to apply for an individual permit or seek coverage under a general permit. 40 C.F.R. § 122.26(c)(1).

C. **<u>Section 404</u>**

30. As noted above, section 404(a) of the CWA, 33 U.S.C. § 1344(a), authorizes the Corps to issue permits for the discharge of fill material to navigable waters at specified disposal sites. Discharges of fill, such as dirt and rock, into streams and wetlands that are waters of the United States require a permit under CWA section 404.

31. The Site at issue here falls within the regulatory jurisdiction of the Corps' Mobile District for purposes of CWA section 404. Unlike the NPDES program under section 402, the State of Mississippi is not authorized to issue permits under CWA section 404.

## FACTUAL BACKGROUND

32. Massey purchased the subject property, an 80-acre tract of uplands, wetlands, and streams in January 1998. The Site is located east of the intersection of Merrill Road and Pre Eddy Road, near Lucedale, Mississippi, with approximate GPS coordinates of 30°56'09" north latitude and 88°42'11" west longitude.

33. Several streams crisscross the Site and join an unnamed perennial stream that is the locus of Massey's primary CWA violation — the dam. The Site also contained patches of forested wetlands along the banks and contiguous to the perennial stream, which were destroyed by Massey's dam and the impoundment the dam created.

34. The perennial stream's flow exits the Site along the western boundary and converges with Pree Creek, another perennial stream, a short distance from the Site (less than a mile). Pree Creek flows about 1.1 miles directly into the Pascagoula River, which is currently used, was used in the past, and is susceptible to use in interstate or foreign commerce and is a traditional navigable water ("TNW") under the Rivers and Harbors Act, 33 U.S.C. § 403. The impacted stream at the Site and Pree Creek are tributaries to the Pascagoula River.

35. The Pascagoula River is one of the most prominent waterways in southeastern Mississippi, draining an area of about 8,800 square miles and ultimately flowing into Mississippi Sound at the Gulf of Mexico. The River and its associated marshes and wetlands are a haven for fish, wildlife, and visitors who wish to recreate or simply experience the area's natural beauty.

36. The streams at the Site, along with Pree Creek, transport a permanent flow of water to the Pascagoula River, supporting the River's navigability, augmenting pollutant assimilation, and supporting the River's flora and faunal assemblages. For example, the Pascagoula River in George County is critical habitat for the threatened Gulf sturgeon, and the tributaries in the Pree Creek basin, including those on the Site, transport a steady volume of water to the Pascagoula River to provide habitat for this and other species.

37. Between 2004 and 2006, Massey developed a plan to construct what she represented would be a 17-acre recreational lake at the Site with proposed impacts to approximately 1.18 acres of adjacent wetlands and approximately 9,000 linear feet of predominantly perennial streams. According to Massey, she was advised that she would need a CWA permit before undertaking this project.

38. Massey retained her own wetlands consultants for the proposed dam. Among other things, Massey's consultants confirmed the applicability of the CWA to the waters at the Site, estimated the dam project's potential impacts, and assisted in preparing her CWA permit applications. In her permit applications to the Corps, Massey agreed that the majority of impounded waters are perennial streams and that the CWA applied to the waters at the Site.

39. In 2004 and 2006, Massey submitted an application pursuant to CWA section 404 to the Corps' Mobile District for a permit to build a dam to impound the stream and create a recreational lake. The Corps determined that most of the aquatic resources at the Site were high

7

quality and advised Massey that obtaining a CWA permit for the dam and lake would be difficult to obtain and very expensive due to the need to compensate for the extensive impacts to protected waters.  After learning from the Corps that she was unlikely to receive a permit, Massey eventually withdrew both applications.

40.    Without the requisite CWA permits under CWA sections 402 and 404, Massey proceeded to construct a dam at the Site but did not inform the Corps of her activities.  She hired a local contractor to do the earthmoving and provided heavy machinery that she owned – including a Komatsu trackhoe and bulldozer – for use on the dam project.  At Massey's direction, her machinery was used to clear, excavate, grade, and deposit dirt and other earthen material directly into the stream and wetlands at the Site.  Much of the dam's material came from the borrow pit area, a convenient source of fill on Massey's land just a few hundred yards from the dam's location.

41.    Massey did not sufficiently stabilize the borrow pit during or after the construction of the dam.  The pit has steep sidewalls that are prone to erosion and surface water collects and funnels down through the pit, washing sediment from and through the borrow pit and into a channel leading to the stream.  Sediment deposits are visible upon inspection of the Site and are continuing to build up in the channel and the stream near the dam.

42.    Sedimentation affects water quality physically, chemically, and biologically. Sedimentation can destroy fish spawning beds and clog streams.  Sediment often carries organic matter, animal or industrial wastes, nutrients, and chemicals that may be toxic to aquatic plants and animals.

43. In 2010, the Corps received an anonymous tip that Massey had constructed a dam and lake at the Site. Since she had received no CWA permit, the Corps promptly referred the matter to EPA for enforcement.

44. In September 2011, EPA issued an Administrative Compliance Order (the "ACO") to Massey. In the Findings of Fact and Determinations of Law, EPA concluded that Massey violated CWA section 301(a), 33 U.S.C. § 1311(a), by constructing the dam in waters of the United States without a permit. EPA ordered Massey to cease her CWA violations and to submit a Restoration Plan for review and approval.

45. After issuing the ACO, EPA engaged with Massey on multiple occasions to encourage her to take corrective action to restore the environmental damage and come into compliance with the CWA. Despite EPA's efforts, Massey did not comply with the ACO.

46. EPA visited the Site in 2015 and 2018 with representatives from MDEQ and documented the environmental conditions as described herein. The dam filled approximately 0.34 acres of the stream and continues into uplands. The impoundment behind the dam converted over 9,000 linear feet (almost 2 miles) of mostly perennial tributaries into a 34-acre recreational lake – twice the size of what she was proposing in her unsuccessful CWA permit applications. The lake inundated and thereby destroyed an additional 1.18 acres of forested wetlands at the Site. Massey has not taken corrective action or provided compensatory mitigation for the losses to waters of the United States.

## FIRST CLAIM FOR RELIEF

### Unauthorized Discharges of Dredged and/or Fill Material

47. The United States re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 46.

48. Beginning in or by 2008, and continuing thereafter, at times best known to Defendant, Massey and/or persons acting on her behalf, discharged dredged or fill material into waters of the United States without a permit under CWA section 404. The unauthorized discharges were made into a perennial stream and abutting wetlands at the Site.

49. The subject stream at the Site is a tributary to the Pascagoula River, a traditional navigable water, and is a water of the United States within the meaning of the CWA, as provided in 33 U.S.C. § 1362(7).

50. The stream flow from the Site joins Pree Creek and then meets the Pascagoula River only 1.1 miles to the west. The Pascagoula River system is currently used, was used in the past, and is susceptible to use in interstate or foreign commerce. A relatively permanent connection and significant nexus exists between the affected tributaries and wetlands and the Pascagoula River. The subject waters, either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of downstream waters, including the Pascagoula River.

51. Massey's activities at the Site resulted in the unauthorized discharge of dredged or fill material into waters of the United States. The dredged or fill material that Massey and/or persons acting on her behalf caused to be discharged includes, among other things, dirt, spoil, rock, sand, and earthen material, all of which constitute "pollutants" as defined in CWA section 502(6), 33 U.S.C. § 1362(6).

52. Massey and/or persons acting on her behalf used mechanized land-clearing and earthmoving equipment, including a bulldozer and trackhoe, to accomplish the discharges. These items of equipment constitute "point sources" as defined in CWA section 502(14), 33 U.S.C. § 1362(14).

53. Massey did not obtain a permit from the Corps for the discharges of dredged or fill material into waters of the United States at the Site, as required by CWA sections 301(a) and 404, 33 U.S.C. §§ 1311(a) and 1344.  She had no CWA authorization for any discharges.

54. Massey owned and/or otherwise controlled the property on which each unauthorized discharge of dredged or fill material into waters of the United States occurred.

55. Massey planned, conducted, directed, contracted for, supervised and/or otherwise controlled and/or participated in the unauthorized activities at issue on her property.

56. Massey is a person within the meaning of CWA section 502(5), 33 U.S.C. § 1362(5).

57. Massey has violated and continues to violate CWA section 301(a), 33 U.S.C. § 1311(a), by her unauthorized discharges of dredged or fill material into waters of the United States, including the unnamed tributary to the Pascagoula River and wetlands at the Site.

58. Each day that such material remains in place constitutes a separate violation of CWA section 301(a), 33 U.S.C. § 1311(a).

59. Despite EPA's efforts to order and otherwise encourage compliance after learning of her violations, Massey has not fully cooperated with EPA's requests.  Massey has not undertaken appropriate remedial actions and the dam remains in place at the Site.  Unless enjoined, Massey is likely to continue to discharge dredged or fill material into, or allow dredged or fill material to remain in, waters of the United States at the Site, in violation of CWA section 301(a), 33 U.S.C. § 1311(a).

## SECOND CLAIM FOR RELIEF

**Unauthorized Discharges of Construction Storm Water**

60. The United States re-alleges and incorporates by reference the allegations set forth in Paragraphs 1 through 59.

61. The area of earth disturbance associated with the borrow pit at the Site is approximately 1.4 acres. The footprint of the dam is approximately 0.67 acres. As described above, Massey's excavation of the borrow pit and construction of the dam were part of a larger project to build a recreational lake and that lake covered approximately 34 acres at the Site.

62. As of April 2015, EPA observed clear evidence that sediment-laden water was flowing into and through the borrow pit and into a channel leading to a perennial stream near the dam at the Site. The borrow pit excavations have steep, unstabilized slopes and the area is prone to erosion. Erosion also was occurring on the slopes of the dam Massey constructed at the Site.

63. As of April 2018, EPA confirmed that sediment-laden water was continuing to flow into and through the borrow pit and into a channel leading to a perennial stream near the dam at the Site at the Site. The borrow pit had not been adequately stabilized and was continuing to actively erode at that time. Erosion also was continuing to occur from one or more areas of the dam.

64. On numerous occasions since at least 2008, Massey and/or persons acting on her behalf, or with Massey's consent and/or knowledge, discharged "storm water associated with small construction activity," within the meaning of 40 C.F.R. § 122.26, from point sources to "waters of the United States" and "navigable waters" within the meaning of CWA section 502(7), 33 U.S.C. § 1362(7).

65. Storm water discharges associated with small construction activity, such as the clearing, excavating, and grading Massey conducted in the borrow pit area, constitute discharges from a point source for purposes of the CWA.

66. The storm water discharges described in the Paragraphs above constituted discharges of a pollutant within the meaning of CWA section 301(a), 33 U.S.C. § 1311(a), and CWA section 502(12), 33 U.S.C. § 1362(12).

67. Massey did not obtain an NPDES permit for any of these discharges at the Site, as required by CWA sections 301(a) and 402, 33 U.S.C. §§ 1311(a) and 1342, and 40 C.F.R. § 122.26(c)(1).

68. After EPA brought these matters to Massey's attention, she has not adequately addressed them at the Site through the implementation of erosion control measures and best management practices ("BMPs").  Accordingly, unauthorized storm water discharges of pollutants do and will continue to occur at the Site during every significant rainfall.

69. Due to Massey's discharge of construction storm water to waters of the United States without a CWA section 402 permit, Massey is liable to the United States for injunctive relief and civil penalties.

70. Unless enjoined, Massey is likely to continue to discharge storm water to waters of the United States at the Site in violation of CWA section 301(a), 33 U.S.C. § 1311(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court order the following relief:

1. That Massey be permanently enjoined from discharging or causing the discharge of dredged or fill material, sediment, storm water, and any other pollutant into any waters of the United States except in compliance with the CWA;

2. That Massey be enjoined to undertake compensatory measures, at Massey's expense and at the direction of EPA, to provide complete restoration of the Site and provide mitigation for any loss of function or other environmental damage;

3. That Massey be enjoined to comply with the CWA's requirements and the Act's implementing regulations in the future;

4. That Massey be assessed, pursuant to CWA section 309(d), 33 U.S.C. § 1319(d), an appropriate civil penalty for violating CWA section 301(a), 33 U.S.C. § 1311(a);

5. That the United States be awarded costs and disbursements in this action; and

6. That this Court grant Plaintiff, the United States of America, such other relief as the Court may deem just and proper.

Dated: January 14, 2021

Respectfully submitted,

U.S. DEPARTMENT OF JUSTICE

*/s/ Michael C. Augustini*
MARTIN F. McDERMOTT
IL Bar Number 6183307
MICHAEL C. AUGUSTINI
DC Bar Number 452526
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington D.C. 20044-7611
Tel: (202) 514-4122 (McDermott)
Tel: (202) 616-6519 (Augustini)
Fax: (202) 514-8865
Email: martin.mcdermott@usdoj.gov
Email: Michael.augustini@usdoj.gov

D. MICHAEL HURST, JR.
United States Attorney
Southern District of Mississippi

*/s/ Jennifer Case*
JENNIFER CASE
MS Bar No. 104238
Assistant United States Attorney
Office of the United States Attorney
Southern District of Mississippi
501 E. Court Street, Suite 4.430
Jackson, Mississippi 39201
Tel:  (601) 965-4480

OF COUNSEL:

MATTHEW HICKS
Associate Regional Counsel
United States Environmental Protection Agency, Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia  30303
(404) 562-9670

*Counsel for Plaintiff United States of America*

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

1:21-cv-17-HSO-JCG

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

### DEFENDANTS
Brenda Massey

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   George
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael C. Augustini - US Department of Justice
P.O. Box 7611, Washington, DC 20044-7611
202-616-6519

Attorneys *(If Known)*
Mr. Lee Turner
438 Main Street, Leakesville, MS 39451
601-394-5008

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☒ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| | | | | ☐ 864 SSID Title XVI | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☒ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Clean Water Act, 33 U.S.C. §§ 1319(b) and 1319(d)

Brief description of cause:
Unauthorized discharges of pollutants into waters

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:

**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE   n/a                          DOCKET NUMBER _____

DATE: 01/14/2021

SIGNATURE OF ATTORNEY OF RECORD
/s/ Michael C. Augustini

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE